IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ------------------------------------------------------ : | |
| KIMBERLY CARLQUIST : | CASE NO.  1:12 CV 0203 |
| : | |
| Plaintiff, : | MEMORANDUM OF OPINION AND |
| : | ORDER GRANTING DEFENDANT'S |
| -vs- : | RULE 12(b)(6) MOTION TO DISMISS |
| : | |
| : | |
| WELLS FARGO BANK, N.A., : | |
| : | |
| Defendant. : | |
| ------------------------------------------------------ : | |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss Kimberly Carlquist's ("Ms. Carlquist") Second Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6).  (Doc. 13).  In her Second Amended Complaint filed on 31 January 2012, Ms. Carlquist alleges Wells Fargo failed to adhere to the terms of a written agreement (the "Agreement") to suspend foreclosure proceedings with respect to the property located at 714 Cloverdale Ave., Crestline, Ohio 44827 (the "Property").  Ms. Carlquist sues for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), negligent supervision (Count III), injunction (Count IV), unjust enrichment (Count V), equitable tolling (Count VI), and an emergency injunction (Count VII).  (Doc. 12).  Ms. Carlquist has filed an opposition to the motion to dismiss (Doc. 15), to which Wells Fargo has replied (Doc. 17).

For the reasons discussed below, this matter will be dismissed pursuant to FRCP 12(b)(6).

## I. BACKGROUND

Styled as a class-action effort, Ms. Carlquist's Second Amended Complaint alleges that the Property was improperly sold in foreclosure after she had entered into a written Agreement on 17 November 2010 with Wells Fargo, the holder of the note on the Property, to suspend the foreclosure action upon her payment of four monthly sums of $400.00 (referred to as "TPP Payments"). (SAC Exhibit A, "Stipulated Partial Reinstatement/Repayment Agreement").  Ms. Carlquist alleges that her payment of these sums obligated Wells Fargo to dismiss the foreclosure proceedings.  The Agreement explicitly provides:

> The receipt of such payments referred to in paragraph two (2) of this agreement does not constitute a waiver of our rights or remedies contained in the Note and/or Mortgage; and acceptance of any payments made by you will not be deemed to affect the acceleration of the note and/or Mortgage in the event of default under the terms of this agreement and the remainder of the accelerated loan balance shall remain due and owing.
>
> We will not instruct our foreclosure counsel to suspend foreclosure proceedings until this signed agreement and funds for partial reinstatement have been received by the aforementioned date.  Fees and costs will be paid first, with the remainder being credited to accrued payments.  If you make all of the remaining required payments as outlined below resulting in a full reinstatement, we will instruct our foreclosure counsel to dismiss foreclosure proceedings and report to credit bureaus accordingly.  If you [ ] default on the repayment plan outlined below, any other terms of this agreement, any additional terms of your Note or Mortgage not addressed here, we will resume the foreclosure action immediately.

(SAC, Exhibit A, p. 1).

2

The judicial proceedings prior to the Agreement involved a foreclosure action on 15 July 2009, against Ms. Carlquist and her husband, for the Property they purchased on 22 July 2005, and on which they had ceased remitting payment in February 2009. That action was reduced to a foreclosure judgment in default on 22 September 2009. The Property was slated for sale and postponed a number of times. On 15 November 2010, Wells Fargo sent the Carlquists the Agreement to consider, which they signed on 17 November 2010.

Immediately subsequent to signing the Agreement, the Carlquists leased the Property to Winona and Joseph Oehrli for a one year term ending on 30 November 2011. The Carlquists' Mortgage contains a Second Home Rider restricting the property to the Carlquists' "exclusive use and enjoyment at all times" and specifically prohibits the property from being used in "any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the property." (Exhibit 1 at Ex. B). That Rider was in full force and effect during the pendency of the Agreement between Ms. Carlquist and Wells Fargo.

On 18 May 2011, Wells Fargo requested the Clerk of the Crawford County Court to issue an Order of Sale for the County Sheriff to sell the property. In response, on 28 April 2011, the Carlquists filed an Emergency Motion for Stay or Temporary Restraining Order of Foreclosure Sale in the Crawford County Court. In the Emergency Motion the Carlquists represented that the four payments made pursuant to the Agreement served to reinstate the loan, contending that Wells Fargo was improperly

3

foreclosing upon the property.  Attached to the Emergency Motion, the Carlquists included the December 2010 Lease for the Property to the Oehrli's.

In a decision, on 29 April 2011, the Crawford County Court of Common Pleas denied the Carlquists' Emergency Motion on the merits.  (Doc. 13, Ex. 4, Order).  The Carlquists did not appeal the decision on the Emergency Motion, and a Confirmation Order of the sale of the Property was recorded by the Crawford County Court on 5 June 2011.  The Carlquists did not appeal the Confirmation Order.

On 8 July 2011, a writ of possession was issued to remove the renters from the Property which the Carlquists opposed in their 29 July 2011 Motion for Relief from Judgment pursuant to Civil Rule 60(B).  (Doc. 13, Ex. 6 Motion for Relief).  The Carlquists argued in the Motion for Relief that their four payments under the Agreement should relieve them from the Foreclosure Judgment and require Wells Fargo to reinstate their loan on the Property.  The Crawford County Court stayed execution of the Writ of Possession to allow time for a review of the Carlquists' Motion for Relief.  (Doc. 13, Ex. 7 Order).  The Crawford County Court set a hearing on the Motion for Relief for 11 January 2012, and the Carlquists filed a Notice to Withdraw the Motion for Relief on 10 January 2012.  (Doc. 13, Ex. 8 Notice).  The Crawford County Court ordered the stay lifted on 12 January 2012 and reissued the Writ of Possession.

On 17 January 2012, Ms. Carlquist filed the instant action in Crawford County Court with class action allegations which was removed to this Court pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act.

**II. LAW AND ARGUMENT**

    **A. Standard of Review**

Wells Fargo maintains that Ms. Carlquist's Second Amended Complaint fails to meet the minimum pleading standards established under Bell Atlantic Corp. V. Twombly, 550 U.S. 544 (2007), and reiterated in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948-50 (2009).

The decision in Twombly established a more rigorous pleading standard in which "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp v. Twombly, 127 S.Ct. at 1968-69, 64-65. The decision in Iqbal, reinforced the now more rigorous pleading standard laid down in Twombly. See Ashcroft v. Iqbal, 129 S.Ct. 1948-49.

The Court's task, in addressing a Rule 12(b)(6) motion, is to "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Ashcroft v. Iqbal, 129 S.Ct. at 1951. Pursuant to this standard, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although the complaint need not contain "detailed factual allegations," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, Rule 8(a)(2) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949. As the Supreme Court explained in Iqbal: "A pleading that offers labels and conclusions or a

5

formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.  Following Twombly and Iqbal, it is well settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).  A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  (stating that factual allegations "merely consistent with liability stop[ ] short of the line between possibility and plausibility").

### B.  Breach of Contract (Count I)

The gravamen of Ms. Carlquist's breach of contract claim is that Wells Fargo's action to proceed with the foreclosure sale of the Property after she had submitted the four payments, under the terms of the Agreement, resulted in the Defendant's breach of the Agreement.

However, a review of the record indicates that the Crawford County Court already considered, and disposed of, that argument from the Carlquists in its 29 April 2011 Order denying the Plaintiffs' Emergency Motion for Relief from the foreclosure sale of the Property.  The state court's decision on the merits was not appealed by the Carlquists.  To the extent Ms. Carlquist now seeks to raise the same issues that were litigated and decided against her in the prior state action, her claims are barred from

review under the doctrine of collateral estoppel, which bars "relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." Tenenbaum v. United States Dep't of Defense, 407 F. App'x 4, 6 (6th Cir. 2010) (quoting Cobbins v. Tennessee Dep't of Transp., 566 F.3d 582, 589 (6th Cir. 2009)) (affirming the dismissal of the plaintiffs' § 1983 action because their claims turned on an issue raised and litigated in a prior action that was necessary to the final resolution of the case, and plaintiffs had a "full and fair opportunity" to litigate the issue in the prior case), cert. denied, 131 S.Ct. 2549 (2011). As such, this Court must afford the Crawford County Court's finding preclusive effect in the instant case.

When determining whether to give preclusive effect to the judgment of a state court, a federal court looks to the state's own rules for preclusion. See, e.g., Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 367-68 (6th Cir. 2007). In Ohio, issue preclusion, or collateral estoppel, precludes the relitigation of an issue or issues "that have been actually and necessarily litigated and determined in a prior action." Goodson v. McDonough Power Equip., Inc., 2 Ohio St. 3d 193, 195, 443 N.E.2d 978, 981 (1983). In the instant case, the issue of whether the Carlquists' four payments to Wells Fargo, under the terms of the Agreement, halted the foreclosure proceedings and reinstated the loan on the Property was litigated in Crawford County Court of Common Pleas that

denied Carlquists' Emergency Motion for relief.[1] Accordingly, the Court will grant Wells Fargo's motion to dismiss Count I of the SAC, pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Breach of Covenant of Good Faith and Fair Dealing (Count II)

Ms. Carlquist maintains that "by either contract or common law [Wells Fargo was obligated] to act in good faith and to deal fairly with Plaintiff and the Class." (SAC ¶ 63). Ms. Carlquist alleges Wells Fargo breached this duty by

> (a) failing to properly supervise its agents and employees, (b) failing to follow through on written, verbal, and implied promises such as those promises contained in the Agreement; (c) failing to honor written agreements entered into during the pendency of foreclosure actions such as the Agreement; and (d) failing to properly apply TPP Payments in accordance with contractual obligations and/or statute and/or any implied dut(ies).

(SAC ¶ 65).

---

[1] Moreover, any claims by Ms. Carlquist challenging actions taken in the Crawford County Court case are barred from review under the Rooker–Feldman doctrine. The Rooker–Feldman doctrine, named after the decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), prohibits federal courts below the United States Supreme Court from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." Exec. Arts Studio, Inc., v. City of Grand Rapids, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted). The doctrine stands for the proposition that "the lower federal courts do not have jurisdiction 'over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." ' " Raymond v. Moyer, 501 F.3d 548, 550–51 (6th Cir.2007) (quoting Lance v. Dennis, 546 U.S. 549, 460 (2006), and Exxon Mobil, 544 U.S. at 284). The Rooker–Feldman doctrine is premised on the notion that only the Supreme Court has jurisdiction to review state court judgments. See 28 U.S.C. § 1257.

> The Rooker–Feldman doctrine, ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker–Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Exxon Mobil Corp., 544 U.S. at 284.

Ohio Courts do not recognize a good fath and fair dealing claim separate from a breach of contract claim.  In Bolling v. Clevepak Corp. (1984), 20 Ohio App.3d 113, 20 OBR 146, 484 N.E.2d 1367, the Ohio appellate court stated that parties to a contract are "bound toward one another by standards of good faith and fair-dealing."  The decision in Lakota Local School Dist. Bd. of Edn. v. Brickner (1996), 108 Ohio App.3d 637, 646, 671 N.E.2d 578, clarified Bolling and noted that Bolling does not stand for the proposition that breach of good faith exists as a separate claim.  "Instead, [ Bolling recognizes] the fact that good faith is part of a contract claim and does not stand alone." Id.  As the Court is equitably estopped from exercising jurisdiction over the breach of contract claim, it is equivalently without jurisdiction to adjudicate the Plaintiff's good faith and fair dealing claim.  See McCubbins v. BAC Home Loans Servicing, L.P., 2012 WL 140218, *5 (S.D. Ohio, 18 January 2012) (noting that a claim for a violation of the duty of good faith and fair dealing cannot stand separate from a claim for breach of contract and cannot be used to add new duties or obligations into a contract.)

Moreover, the allegations propounded in support of the Plaintiff's good faith and fair dealing claim fail to meet pleading requirements under Twombly and Iqbal.   While the Court must construe the complaint in favor of Plaintiff, accept the factual allegations contained in that pleading as true, and determine whether the factual allegations present plausible claims, the Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Consequently, "[d]etermining whether

9

a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Having found that the legal conclusions in the Second Amended Complaint ¶ 64, illuminating the claim for good faith and fair dealing, fail to support the cause of action under Iqbal and Twombly, the Court will grant the Defendant's motion to dismiss Count II.

### D. Negligent Supervision (Count III)

Ms. Carlquist maintains that the negligent conduct of Wells Fargo employees caused injury to her and to the Class by "failing to 'instruct' its foreclosure counsel to suspend and/or dismiss the Foreclosure Action", that Wells Fargo had knowledge of its employees conduct and took no steps to remedy the injurious action. (SAC ¶¶ 61-76). Ms. Carlquist seeks purely economic damages. (SAC ¶ 76).

Negligent supervision is a tort claim for which the Ohio Courts have identified the following elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Cooke v. Montgomery Cnty., 158 Ohio App.3d 139, 814 N.E.2d 505, 509 (Ohio Ct. App. 2004). Further, according to the Supreme Court of Ohio, "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person." Strock v. Pressnell, 38 Ohio St.3d 207, 527 N.E.2d 1235, 1244 (Ohio 1988).

Here, Ms. Carlquist's claim for negligent supervision fails because it deploys the tort claim in the context of a contract dispute.  Ohio courts reject such an effort.  See Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 42 Ohio St.3d 40, 45, 537 N.E.2d 624 (1989) (holding that Ohio recognizes the economic-loss rule and that "[w]hen the promisee's injury consists merely of the loss of his [or her] bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract.").  As a tort claim, negligent supervision is recognized in cases for personal injury, wrongful death, or property damage of a third party, instances in which the parties do not enjoy the privity of contract present between the Carlquists and Wells Fargo.  See Abdulnour v. Campbell Soup Supply Co., L.L.C., 464 F.Supp.2d 711, 718 (N.D. Ohio 2006).

Where, as here, a contract exists between the parties, the economic-loss rule disallows bringing a tort claim against Wells Fargo to remedy allegations that the Defendant failed to fulfill its duties under the Agreement.   Accordingly, the Court will grant Wells Fargo's motion to dismiss Count V of the Second Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

### E.  Injunction (Count IV)

Ms. Carlquist propounds her "injunction" claim as a request for the Court to suspend "any and all active foreclosure lawsuits involving any member of the Class" and to order the Defendant to place the Class member's TPP Payments into an escrow

11

account. As with Ms. Carlquist's breach of contract claim, over which the state court decision has preclusive effect, so it is with her injunction claim.

The instant Court must give the same preclusive effect to a state-court judgment that another court of that state would give. See Exxon Mobile corp v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). This Court must give full faith and credit to the Crawford County Court's judgment in the Foreclosure Action, its denial on the merits of the Carlquist's Emergency Motion, the Court's Confirmation Order, and its issuance of the writ of possession. Accordingly, the Court will grant the Defendant's request to dismiss Count IV of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### F.  Unjust Enrichment (Count V)

Ms. Carlquist maintains that it would be unjust to allow Wells Fargo to retain the four payments she made pursuant to the Agreement. However, the plaintiff cannot recover under a theory of unjust enrichment — a quasi-contract theory — where, as here, a written contract actually governs the parties' relationship.

Unjust enrichment is an equitable doctrine, allowing a court to imply a "quasi-contract" wherein a party "retains money or benefits which in justice and equity belong to another." MVB Mortg. Corp. v. F.D.I.C., 2010 WL 654051, *3 (S.D. Ohio) (quoting Hummel, supra, 133 Ohio St. at 525–28, 14 N.E.2d 923 (1938)).

Unjust enrichment claims may be pled in the alternative to a breach of contract claim when the existence of a contract is in dispute. See Resource Title Agency, Inc. v. Morreale Real Estate Servs., 314 F.Supp.2d 763, 772 (N.D.Ohio 2004). Ms. Carlquist

12

does not dispute that an express contract governed this contested matter in the form of the Agreement, Note and Mortgage. The parties' rights and obligations on the loan are clearly expressed in the promissory note and the mortgage. As such, the Plaintiff does not have an unjust enrichment claim as a matter of law and the Court will grant Wells Fargo's motion to dismiss Count V of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### G. Equitable Tolling (Count VI)

Ms. Carlquist's equitable tolling claim that "[t]he filing of this class action lawsuit tolls the statute of limitations on all claims other than the breach of contract counts" does not amount to a cause of action but, merely, stands as a statement of what the law may be regarding whether the claims pled in her complaint are time-barred. Accordingly, Count VI of the Second Amended Complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### H. Emergency Injunction (Count VII)

The Court addressed Ms. Carlquist's claim for an emergency injunction when it denied her Motion for a Temporary Restraining Order on 31 January 2012. (Doc. 7). Count VII of the Second Amended Complaint will be dismissed as moot.

**III.  CONCLUSION**

For the reasons discussed above, the Court grants Wells Fargo's Rule 12(b)(6) motion to dismiss Ms. Carlquist's Second Amended Complaint because it fails to state a claim upon which relief can be granted.

.

IT IS SO ORDERED.

                                                                 /s/Lesley Wells
                                                       UNITED STATES DISTRICT JUDGE